UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
LAWRENCE KOPYLOV

              Appellant,

  -against-

STEPHEN JOHN HUNT and TOTAL
DEBT RELIEF, LTD
              Appellees.
------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No.   1:20-cv-1110-FB

*Appearances:*
*For the Appellant*:
JAMES R. FROCCARO
20 Vanderventer Ave
Suite 103W
Port Washington, NY 11050

*For the Appellee*:
SANDRA E. MAYERSON
Mayerson & Hartheimer, PLLC
845 3rd Ave., 11th Floor
New York, NY 10022

**BLOCK, Senior District Judge:**

    Appellant Lawrence Kopylov seeks review of a series of orders issued by the United States Bankruptcy Court for the Eastern District of New York ("the Bankruptcy Court"), which held him in contempt, ordered him to pay $213,870.48 in attorney's fees to Appellee Stephen John Hunt, and authorized his detention until he complied with the order directing payment.[1] Appellant responded by filing

---

[1] This opinion contains record citations from three proceedings. "ECF No." indicates a citation to the record in Kopylov's appeal, which is docketed in this

1

for personal bankruptcy and sought a stay of the Bankruptcy Court's orders pursuant to 11 U.S.C. § 362(a).

Appellant does not dispute the Bankruptcy Court's contempt finding and has been released from custody. Consequently, the only remaining issue is whether the Bankruptcy Court properly held that its order directing payment to Appellee should not be stayed. Having carefully considered the parties' arguments, the Court finds that the Bankruptcy Court did not err. Accordingly, its rulings are affirmed and Appellant's petition dismissed.

I.

Appellant and his business partner, Eric Puzaitzer ("Puzaitzer"), are principals of Total Debt Relief, Ltd ("TDR"), a United Kingdom ("UK") based company, and two Brooklyn based corporate entities, Total Relief Marketing Solutions, LLC ("TRLM") and KLM Management Corp ("KLM"). TDR is the subject of an enforcement action by the British Financial Conduct Authority ("FCA"), which alleges that Appellant and Puzaitzer systematically defrauded consumers in the UK and seeks to liquidate their corporate assets. In the course of

---

Court under Case No. 1:20-cv-1110-FB. "Bankr. ECF No." indicates a citation to the record in the underlying Bankruptcy Court proceeding, which is docketed in the Bankruptcy Court as *In Re. Total Debt Relief, Limited* under Case No. 1-18-46013-reg. Finally, "1108-ECF No." indicates a citation to a (now moot) appeal filed by Kopylov's business partner, Eric Puzaitzer, under Case No. 1:20-cv-1108. The Kopylov and Puzaitzer appeals arise from the same factual record and underlying bankruptcy court proceeding.

this action, UK authorities learned that Appellant and Puzaitzer were transferring large sums of money from TDR's UK accounts to accounts owned by TRLM and KLM. To prevent this, the FCA sought and obtained a worldwide "freezing injunction" from the UK High Court of Justice, Business and Property Court ("UK Court"). Bankr. ECF No. 4, Ex. 3 at 71. The FCA further obtained a liquidation order from the UK Court, and Appellee was appointed to liquidate TDR's assets.

In October of 2018, Appellee instituted a proceeding under Chapter 15 of the Bankruptcy Code for the purposes of (1) gaining access to records in the United States necessary to identify, evaluate and preserve the value of TDR's assets; (2) securing the right to commence litigation to recover assets that TDR may have given to other entities; (3) preventing the degradation of TDR's assets; and (4) enforcing the UK Court's freezing injunction. *See* Bankr. ECF Nos. 2-4. After a hearing, the Bankruptcy Court granted the relief Appellee sought, appointing him a "Foreign Representative" with the power to "examine witnesses, take evidence and deliver information concerning [TDR], its assets, liabilities, and operations and. . . [to administer] all of [TDR's] assets within the territorial jurisdiction of the United States" and extending the freezing injunction to the United States. Bankr. ECF No. 15 at 4. On January 25, 2019 the Bankruptcy Court ordered Appellant to turn over a variety of financial documents to Appellee and prohibited Appellant from taking any action to destroy or dispose of these records. Bankr. ECF No. 22 at 3.

Appellant failed to turn over the documents as required, and Appellee moved for a finding of contempt. The Bankruptcy Court held a contempt hearing on April 25, 2019. After the hearing, the Bankruptcy Court issued an order holding Appellant in contempt for failure to comply with its January 25 Order and listing 15 types of documents and information that Appellant was to provide before April 30, 2019. Bankr. ECF No. 52. The contempt order further provided that Appellant would be assessed a $500 fine for each day of noncompliance after this new deadline and required Appellant to pay "all reasonable fees and expenses of [Appellee] in filing and prosecuting this Contempt, including fees and expenses of [Appellee's American counsel] Mayerson & Hartheimer in connection with this matter, fees and expenses of [Appellee's] British Solicitors. . . and fees and expenses of any witness." Bankr. ECF No. 52 at 5. Finally, the Bankruptcy Court ordered Appellee's counsel to file an affidavit of non-compliance if Appellant failed to turn over all relevant documents by May 5, 2019. *Id.*

By May 5, Appellee had received some but not all of the information to which the Bankruptcy Court's orders entitled him. Accordingly, Appellee filed an affidavit of noncompliance, and a second hearing was held on May 20, 2019. After that hearing, the Bankruptcy Court entered a Second Contempt Order, which reiterated the terms of the first, set a series of new deadlines to provide the required materials and scheduled a new contempt hearing for May 29, 2019. Bankr. ECF

No. 68. At that hearing, the Bankruptcy Court determined that Appellant had not yet produced all the required materials. Bankr. ECF No. 75.

There followed a series of hearings that failed to produce compliance with the Bankruptcy Court's orders. Over the next several months, the Bankruptcy Court issued its Third and Fourth Contempt Orders. *See* Bankr. ECF Nos. 76, 80. Each reiterated the terms of its predecessors, including the requirement that Appellant pay Appellee's fees. On June 17, 2019, the Bankruptcy Court ordered Appellee to submit an application for attorney's fees to facilitate its assessment of the "fees and expenses" Appellant was required to pay. Bankr. ECF No. 89. The Bankruptcy Court held a hearing on that application and granted Appellee a fee award of $213,870.48, which Appellant was required to pay by October 21, 2019. Bankr. ECF No. 116. The Bankruptcy Court stated that it was imposing a fee award "to remediate the expense incurred by [Appellee] as a result of [Appellant's] civil contempt and to coerce the [Appellant] to comply with this Court's orders." *Id.* at 1.

In October of 2019, history repeated itself, as Appellant once again ignored the Bankruptcy Court's orders, and Appellee filed another affidavit of noncompliance. The Court held a hearing on November 13, 2019 to address Appellant's noncompliance, which was adjourned to allow Appellant to brief the issue of his ability to pay the fines imposed. On November 27, 2019, Appellant

declined this opportunity, stating in a letter that he "had nothing to add" to his statements at the hearing. Bankr. ECF No. 126. The Bankruptcy Court responded to Appellant's silence by setting another briefing schedule and a January 8, 2020 hearing. One day before that hearing, Appellant informed the Bankruptcy Court that he had filed for Chapter 7 personal bankruptcy and invoked 11 U.S.C. § 362(a)'s automatic stay provision. Bankr. ECF No. 132.

In response, the Bankruptcy Court adjourned the January 8 contempt hearing and ordered the parties to brief the questions of whether contempt proceedings were subject to an automatic stay, and if they were not, whether it should detain Appellant. Bankr. ECF No. 136. On February 26, 2020, the Bankruptcy Court held its hearing, where it concluded that 11 U.S.C. § 362(a)'s stay provision did not apply because it was "crystal clear" that the purpose of its contempt order was to "uphold the dignity of [the Bankruptcy Court]." *See* 1108-ECF No. 4 at 32 (hearing transcript). *See also* 11 U.S.C. § 362(b)(4) (no automatic stay of "the commencement or continuation of an action or proceeding by a governmental unit. . . to enforce such governmental unit's or organization's police or regulatory power, including the enforcement of a judgment other than a money judgment").

Appellant was briefly imprisoned for noncompliance with the Bankruptcy Court's orders but has since been released after he agreed to "supply certain documents" to Appellee. ECF Nos. 12, 14; *see also* 1108-ECF No. 17.

This appeal followed.

## II.

The Court reviews the Bankruptcy Court's "factual findings for clear error and its legal conclusions de novo." *In re Motors Liquidation Company*, 957 F.3d 357, 360 (2d Cir. 2020). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Wallace*, 937 F.3d 130, 141 (2d Cir. 2019) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)).

## III.

The Court has jurisdiction over this appeal. The Supreme Court recently held that "adjudication of a motion for relief from [11 U.S.C. § 362(a)'s] automatic stay [provision] forms a discrete procedural unit within the embracive bankruptcy case. That unit forms yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Ritzen Grp Inc., v. Jackson Masonry, LLC*, 140 S.Ct. 582, 586 (2020). Although the present case involves an attempt to invoke the stay provision, not a request for relief from it, the Supreme Court's conclusion that stay proceedings form a "discrete procedural unit" suggests that a bankruptcy court's decision not to impose a stay is also final. The Second Circuit has likewise ruled that an order "finding that the automatic bankruptcy stay does not apply to

7

[a] contempt proceeding is final and therefore reviewable." *Federal Trade Comm. v. Rensin*, 771 F. App'x 84, 85 (2d Cir. 2019).

### A. The Bankruptcy Court properly declined to stay enforcement of its contempt sanctions

Title 11, United States Code, Section 362(a) provides that a bankruptcy petition "operates as a stay of" most civil actions and of most efforts to enforce judgments. The automatic stay does not, however, prevent "the commencement or continuation of an action or proceeding by a governmental unit. . . to enforce such governmental unit's. . .police and regulatory power, including the enforcement of a judgment other than a money judgment." 11 U.S.C. § 362(b)(4). The Bankruptcy Court concluded that its order directing payment of Appellee's fees fell within the exception to the rule because it was entered to preserve the Court's dignity and to coerce compliance with its prior orders. Appellant objects that the purpose of the Bankruptcy Court's order is to enforce an award of attorney's fees, and thus that it is an impermissible attempt to enforce a "money judgment." Put another way, the Bankruptcy Court invokes an exception to the automatic stay provision; Appellant invokes an exception to the exception.[2]

---

[2] The parties do not dispute that the Bankruptcy Court is a "governmental unit" and acknowledge that the contempt sanction is a valid exercise of the Bankruptcy Court's power. Thus, the only remaining question is whether the contempt proceedings are an impermissible effort to enforce a money judgment.

8

**1.     The Bankruptcy Court did not clearly err when it stated the purpose of its Order**

The parties' dispute hinges on the "purpose" of the Bankruptcy Court's order. If the "purpose" of the order is to enforce a money judgment, then it is stayed; but if the order was entered to enforce compliance with the Bankruptcy Court's other orders or uphold its dignity, it is not. *Compare Rensin*, 771 F. App'x at 85 (stay applied to contempt order entered of which "the purpose was simply to enforce a money judgment") *with S.E.C. v. Miller*, 808 F.3d 623, 633 (2d Cir. 2015) (stay did not apply to pre-judgment asset-freeze order entered under SEC's regulatory power); *see also Law v. Siegel*, 571 U.S. 415, 421 (2014) (bankruptcy court has "inherent power. . . to sanction abusive litigation practices") (internal citations omitted).

To determine an order's purpose, the Court analyzes its "factual nature" and "procedural posture." *Miller*, 808 F.3d at 632; *see also In Re. Marini*, 28 B.R. 262, 265 (Bankr. E.D.N.Y. 1983) (the purpose of a "fine for contempt. . . . is a question of fact left to the discretion of the court"). Thus, the question of an order's purpose is properly classified as a question of fact, and the Bankruptcy Court's findings about the purpose of its orders must be reviewed for clear error. At the February 26, 2020 contempt hearing, the Bankruptcy Court explicitly found that (1) "it was crystal clear that [its order directing payment of attorney's fees and imposing contempt sanctions] was entered to uphold the dignity of the court"; and (2) "in

9

this case. . . [a] contempt hearing is being held for the purpose of upholding the dignity of the court and the sanction [including the award of attorney's fees] is for the same purpose." 1108-ECF No. 4 at 32-33. Given Appellant's long history of non- or bad-faith compliance with the Bankruptcy Court's orders, the Court is not left with "the definite and firm conviction" that the Bankruptcy Court somehow mistook its own objectives or invoked its dignity in a bad-faith attempt to collect a money judgment. *Wallace*, 937 F.3d at 141. Thus, the Bankruptcy Court's findings were not clearly erroneous.

**2.    Caselaw does not compel reversal of the Bankruptcy Court's findings**

Appellant marshals a number of cases in an attempt to argue that the contempt proceeding should be stayed despite the Bankruptcy Court's findings. All are distinguishable. First, Appellant asserts that *Rensin* dictates the outcome of this case. But even if the non-precedential *Rensin* opinion could bind the Court, *Rensin* involved a party's affirmative request for "compensatory contempt sanctions," whereas the Appellee in this case submitted a fee application only after the Bankruptcy Court directed him to do so as part of an order intended both "to remediate [Appellee's] expenses and to coerce [Appellant] to comply with this Court's orders." *Compare FTC v. Bluehippo Funding LLC,* 08 Civ. 1819 (PAC), 2017 WL 1162201, at *1 (S.D.N.Y. Mar. 26, 2017) *overruled by Rensin*, 776 F.

10

App'x at 86 *with* Bankr. ECF No. 116. Thus, unlike the order stayed in *Rensin*, the Bankruptcy Court's order did not "simply enforce a money judgment."

Appellant's reliance on *SEC v. Brennan*, 230 F.3d 65, 65 (2d Cir. 2000), is also misplaced. In *Brennan*, the Second Circuit held that an order requiring the repatriation of assets needed to pay a judgment was stayed because "once liability is fixed and a money judgment has been entered, the Government necessarily acts only to vindicate its own interest in collecting the judgment." *Id.* at 73. Appellant argues that *Brennan* governs this case because the Bankruptcy Court has fixed liability for attorney's fees and now "necessarily acts only to vindicate its own interest in collecting the judgment." He fails to mention, however, that the Second Circuit limited *Brennan*'s reach in *Miller v. SEC*. 808 F.3d 623, 623 (2d Cir. 2015). In *Miller*, the Second Circuit held that "it did not intend *Brennan* to impose a one-factor timing test whereby orders entered pre-judgment are always exempt from the stay while orders entered (or with continuing force) post-judgment are always subject to the stay" and instead decided the stay issue based on "factual, procedural and policy considerations." *Id.* at 632-33. Thus, post-*Miller*, *Brennan* does not compel the result Appellant seeks, and this Court instead looks to "factual, procedural and policy considerations" to determine whether the Bankruptcy Court's contempt order must be stayed.

11

Those considerations support the Bankruptcy Court's conclusions. As explained above, the Bankruptcy Court made explicit factual findings about the purpose of its contempt orders, which the Court declines to disturb. Moreover, the Bankruptcy Court's decision to grant Appellant relief from the harshest provisions of its order after Puzaitzer and he agreed to provide "certain documents" to Appellee suggests that its primary purpose was to compel compliance with discovery obligations, not secure a money judgment. 1108-ECF No. 17.  Finally, the fact that the Bankruptcy Court will not receive any of the money Appellant has been ordered to pay reinforces that the Bankruptcy Court does not act "to vindicate its own interest in collecting [a] judgment." *Cf. Brennan*, 230 F.3d at 73; *see also Markus v. Rozhkov*, 615 B.R. 679, 713-14 (Bankr, S.D.N.Y. 2020) (collecting cases to support the proposition that fines "payable to the complainant" ordinarily have a "compensatory" purpose). Accordingly, the facts of this case strongly suggest that the Bankruptcy Court's true interest lies in securing compliance with its discovery orders, not in collecting a judgment.

Just as importantly, policy concerns weigh in favor of the Bankruptcy Court's decision. As explained in *Miller*, the automatic stay and its exception are a compromise between two policy goals. 808 F.3d, at 634. The former "centralize[s] all disputes concerning property of the debtor's estate so that [a bankruptcy matter] can proceed efficiently," while the latter "prevents the debtor from frustrating

12

necessary governmental functions by seeking refuge in bankruptcy court." *Id.* at 634-35. Here, the record shows—and Appellant concedes—that he repeatedly disobeyed Bankruptcy Court orders, thereby "frustrating" necessary court functions. ECF No. 13 at 2 (stating that Appellant "is not appealing the contempt finding"). The Bankruptcy Court's decision to deny a stay that would further delay resolution of the parties' dispute was therefore entirely consistent with the policy concerns underlying 11 U.S.C. § 362.

In summary, Appellant's claim that the Bankruptcy Court held him in contempt in order to coerce him to pay an award of attorneys' fees is factually and legally unpersuasive. On the contrary, the record suggests that the Bankruptcy Court ordered Appellant to pay Appellee's attorney's fees as part of an ongoing—and thus far unsuccessful—effort to coerce him into compliance with its other orders, as well as to preserve its inherent dignity. *See generally Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("A civil contempt order is designed to be coercive rather than punitive"). Because the Bankruptcy Court's purpose was not "simply to enforce a money judgment," the automatic stay does not apply. *Cf. Rensin*, 776 F. App'x at 86.

## CONCLUSION

For the foregoing reasons, this appeal is **DISMISSED**, and the opinion of the Bankruptcy Court is **AFFIRMED**.

**SO ORDERED.**

      /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 31, 2021